**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| RUSSELL TAYLOR, ROSEMARY B. PARKER, and JOE BERMUDES, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HARD ROCK INTERNATIONAL (USA), INC. (f/k/a/) HARD ROCK CAFE INTERNATIONAL USA, INC.,<br><br>Defendant. | Civil Action No.: ______________<br><br>**COMPLAINT - CLASS ACTION** |

Plaintiffs Russell Taylor, Rosemary B. Parker, and Joe Bermudes, individually and on behalf of the proposed Class, allege the following against Hard Rock International (USA), Inc. (f/k/a/) Hard Rock Cafe International USA, Inc. ("Hard Rock" or "Defendant"). Their personal experiences are alleged from personal knowledge; the remaining allegations arise from counsel's investigation, Hard Rock's published benefits guides, and public corporate records.

## NATURE OF THE ACTION

1. The Employee Retirement Income Security Act of 1974 ("ERISA") prohibits a group health plan from charging one employee more than another for the same medical coverage based on tobacco use unless the plan complies with the requirements governing health-contingent wellness programs. Hard Rock imposes

just such a charge through its Hard Rock Cafe Inc. Health Benefit Plan (the "Plan"). In the Plan's 2026 Benefits Guide (the "2026 Guide"), it tells employees covered by a Hard Rock International medical plan that tobacco users "will have a surcharge of $15.00 per week." A participant charged for 52 weeks pays $780 more for the same coverage. Avoiding that premium differential requires a lawful wellness program that offers a compliant reasonable alternative, the same full reward, and the prescribed notice. *See* 29 U.S.C. § 1182(b)(1)–(2); 42 U.S.C. § 300gg-4(j)(3)(C)–(E).

2. The 2026 Guide places Hard Rock's "Quit For Life Tobacco Cessation Program" immediately after its description of the tobacco surcharge. It describes coaching, nicotine-replacement products, electronic tools, and a toll-free enrollment number. But it never tells an employee that completing the program entitles the employee to removal of the surcharge, how that removal is requested, whether the employee must quit using tobacco, or how fees already deducted during the plan year will be returned. It identifies no process for receiving the full current-year reward.

3. ERISA's regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, rather than operate

as "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations require a compliant reasonable alternative standard that permits participants to obtain the full reward, including the value of premium relief corresponding to the period before the alternative was satisfied, and proper notice to participants. *See* Final Regulations, 33159–63. A wellness program must be genuinely designed to improve health or prevent disease rather than function as an improper penalty. Hard Rock imposes its tobacco surcharge while omitting the required physician-accommodation notice in the program description and, as alleged, withholding the same full premium reward.

4. That omission has real consequences. The regulatory framework requires that participants who satisfy a reasonable alternative receive the same, full reward for the applicable year as similarly situated participants who meet the initial tobacco-free standard. The Departments specifically explained that a plan must restore the portion of a premium reward attributable to months before the alternative was satisfied. Final Regulations, 33163. Based on Hard Rock's published program terms and the experience of Plaintiffs, Plaintiffs allege that Hard Rock's program does not reimburse or credit tobacco surcharges collected earlier in the same plan year when a participant qualifies through a reasonable alternative.

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

5. The notice failure is independent and apparent on the face of the 2026 Guide, which specifies the tobacco standard and $15-per-week charge and describes the company-selected Quit For Life program, yet never states that recommendations from an individual's personal physician will be accommodated when establishing a reasonable alternative. Nor does it inform participants that an alternative or waiver will produce the same reward. Identifying an employer-selected cessation program and providing the program vendor's enrollment number does not disclose these distinct protections. *See* 29 C.F.R. § 2590.702(f)(4)(v).

6. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

7. Outcome-based programs, such as a program that rewards participants for being tobacco-free while requiring tobacco users to complete a cessation program,[3] must offer a compliant reasonable alternative standard through which all similarly situated individuals may obtain the reward or avoid the penalty. The implementing regulations require the same, full reward for participants who satisfy the reasonable alternative during the applicable plan year.[4] The Departments

---

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward. . . if a wellness program tests individuals for specified medical conditions or risk factors . . . and provides a reward to individuals identified as within a normal or healthy range for these medical conditions or risk factors, while requiring individuals who are identified as outside the normal or healthy range (or at risk) to take additional steps . . . to obtain ***the same reward***" as the individual within the normal range. 29 C.F.R. § 2590.702(f)(1)(v) (emphasis added).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-

explained that every participant who qualifies through an alternative must be able to receive the full reward or incentive. Final Regulations, 33160, 33163. Plaintiffs allege that Hard Rock's published program neither explains a way to obtain the full current-year rebate nor discloses the required physician-accommodation protection.

8. Hard Rock's surcharge therefore implicates both independent limits on the exception permitting health-based premium differentials. The program must satisfy the criteria in 42 U.S.C. § 300gg-4(j)(3) and 29 C.F.R. § 2590.702(f)(4); failing any applicable condition defeats the exception. Plaintiffs challenge both the administration of the full annual reward and the contents of the required disclosures, as well as the management over the Plan's assets and communications with participants about their rights under the Plan.

9. Hard Rock collected the charge as part of the amounts employees paid for employer-sponsored medical coverage. Participant payroll deductions intended as contributions to an ERISA plan become plan assets no later than the earliest date on which they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1). Upon information and belief, Hard Rock or those acting for it controlled the collection, retention, application, and refund of the tobacco-

---

contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

related contributions. To the extent it used participant-derived Plan assets to reduce its own contribution obligations or retained the use and earnings of such assets for its benefit, it obtained profits or other benefits subject to ERISA's fiduciary protections. The funding structure, timing, and disposition of those contributions will be established through the governing Plan documents and financial records.

10. The 2026 Guide gives employees the cost of noncompliance with the initial tobacco standard and the telephone number to enroll in a free cessation program. It does not explain the legally required route to the same current-year premium reward. Hard Rock's 2025 Total Rewards guide used substantially the same surcharge and cessation-program description, likewise without explaining a retrospective premium credit or the physician-accommodation requirement. Plaintiffs allege that the defects in these participant-facing materials reflect the operation and communication of the challenged surcharge program during their respective periods of coverage.

11. The claim concerns money actually charged to tobacco users for medical coverage and the protection Congress attached to such a differential. Plaintiffs do not contend that the mere existence of a cessation program is unlawful. They contend that Hard Rock required an additional payment without furnishing the full reward and notice protections that make the differential permissible. A later assertion that an unwritten reimbursement or individualized accommodation could

have been arranged cannot retroactively supply the required written notice in every material describing the program's terms.

12. The Departments expressly described the wellness program criteria as an affirmative defense to a health-status-discrimination claim. Final Regulations, 33163. Once Plaintiffs allege the premium differential and the material deficiencies, Hard Rock bears the burden of establishing the regulatory exception it invokes. *See also* *Cunningham v. Cornell University*, 604 U.S. 693, 702–04 (2025) (addressing burdens of proof concerning statutory exemptions and affirmative defenses).

13. Russell Taylor, Rosemary B. Parker, and Joe Bermudes worked for Hard Rock or participating Hard Rock entities, enrolled in employer-sponsored medical coverage, and incurred tobacco-related premium surcharges. Each was employed during the period for which he or she challenges the additional contributions. None recalls receiving a meaningful explanation that completing Quit For Life or an individualized alternative would entitle that person to reimbursement of earlier deductions, and none recalls being offered or receiving retroactive surcharge reimbursement. The precise periods and sums charged to each Plaintiff are reflected in payroll and benefit-enrollment records. Plaintiffs seek redress individually and for the proposed Class, and Plan-level relief for breaches of fiduciary duty where supported by the governing Plan and records.

## PARTIES

14. Plaintiff Russell Taylor is an individual who has worked for Hard Rock or a participating Hard Rock employer. He participated in employer-sponsored medical coverage during the relevant period, was classified or treated as a tobacco user for premium purposes, and paid additional amounts because of that classification. He does not recall receiving materials explaining a right to an alternative that delivers the same full annual reward or a means of obtaining refunds for earlier deductions. His precise coverage period and surcharge payments can be verified from employment, enrollment, and payroll records.

15. Plaintiff Rosemary B. Parker is an individual who worked for Hard Rock or a participating Hard Rock employer during the relevant period. While covered by its medical benefits program, she paid the challenged tobacco-related surcharge. She does not recall receiving adequate notice of a physician-directed alternative or a right to reimbursement of earlier charges. She seeks relief for the period in which she participated in the Plan, regardless of whether she remains employed.

16. Plaintiff Joe Bermudes is an individual who has worked for Hard Rock or a participating Hard Rock employer. He participated in employer-sponsored medical coverage and paid the challenged tobacco surcharge. He does not recall being informed of a reimbursement process or an alternative that would return the

full current-year amount of the surcharge. His actual payments and coverage dates are identifiable through Hard Rock's records.

17. Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

18. Defendant Hard Rock is an active Florida corporation with its principal place of business in Davie, Florida 33314. Defendant participates in the Hard Rock International enterprise whose 2026 Guide is addressed to employees covered by Hard Rock International medical plans. Upon information and belief, Defendant sponsors, maintains, or exercises responsibility for the employee benefits program challenged here, directly or through participating employers and authorized administrators. The precise formal name of the governing welfare benefit plan, and the allocation of any delegated administrative responsibilities, are within Defendant's and the Plan's records.

19. The Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). Hard Rock acted as an ERISA fiduciary to the extent that it exercised discretionary authority or control over administration of the surcharge, reasonable alternative process, reimbursements, and participant communications, or any authority or control over the management or disposition of Plan assets. 29 U.S.C. § 1002(21)(A). Defendant's status as a plan sponsor alone does not establish fiduciary liability. Plaintiffs allege functional fiduciary conduct in the actual administration of the challenged program and handling of participant-derived

contributions. Additional responsible fiduciaries or the correct formal Plan name may be identified from the governing documents and joined or otherwise addressed as appropriate.

## JURISDICTION AND VENUE

20. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action seeks relief under ERISA, a federal statute.

21. This Court has personal jurisdiction over Hard Rock because it is incorporated in Florida and maintains its principal place of business in Davie, Florida. Upon information and belief, decisions about the national employee benefits program and its administration are made or supervised in substantial part from that headquarters.

22. Venue is proper in the Southern District of Florida under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant resides and may be found in this District and, upon information and belief, the Plan is administered here or the challenged breaches occurred here. Venue is also proper under 28 U.S.C. § 1391(b). The Fort Lauderdale Division is appropriate because Defendant's headquarters are in Davie, Broward County, Florida.

## FACTUAL BACKGROUND

### I. HARD ROCK'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements.

23. ERISA prohibits a group health plan or health insurance issuer from discriminating in premiums or contributions based on a health-status-related factor, including tobacco use. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); *see also* 42 U.S.C. § 300gg-4(b)(1).

24. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

25. Congress authorized the Secretary of Labor to prescribe regulations necessary or appropriate to carry out ERISA Title I, including its group-health-plan requirements. *See* 29 U.S.C. §§ 1135, 1191c. ERISA also incorporates the applicable

Public Health Service Act requirements, including PHSA § 2705, through 29 U.S.C. § 1185d(a)(1). The statutory and regulatory framework therefore governs the Plan's tobacco-based premium differential. *See* 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702.

26. Congress authorized the Secretary of Labor to prescribe implementing regulations under ERISA. See 29 U.S.C. §§ 1135, 1191c. The Departments adopted amended wellness-program regulations on June 3, 2013, after enactment of the Affordable Care Act. Final Regulations, 33158–59. Those requirements govern the 2025 and 2026 program descriptions and the relevant surcharge practices at issue here.

27. The Final Regulations specify the requirements that a health-contingent wellness program must satisfy to qualify for the statutory exception. The Departments explained that the rules establish criteria for an affirmative defense to a claim of health-status discrimination. Final Regulations, 33163. Once a participant alleges a discriminatory surcharge and facts showing the program's deficiencies, the employer invoking the exception must establish that its program satisfies the applicable statutory and regulatory conditions.

28. The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather

than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***.").

**B. Regulatory Criteria.**

29. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: the applicable limit is generally 30% of the total cost of coverage, increased to 50% to the extent attributable to tobacco-prevention or reduction programs. Employee-only coverage is the baseline unless a class of dependents may participate, in which event the applicable enrolled coverage cost is used. 29 C.F.R. § 2590.702(f)(4)(ii). Plaintiff does not assert a separate percentage-cap violation.

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health

factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice: all materials describing the program's terms must disclose the availability of a reasonable alternative or applicable waiver, include contact information for obtaining the alternative, and state that personal-physician recommendations will be accommodated. The same requirement applies to disclosures that an individual failed the initial outcome-based standard. 29 C.F.R. § 2590.702(f)(4)(v).

30. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

31. Regarding the first criterion, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

32. A central requirement is that the full reward remain available to all similarly situated individuals who satisfy a reasonable alternative during the applicable plan year. 29 C.F.R. § 2590.702(f)(4)(iv). Although a plan has flexibility concerning how to deliver the portion of the reward attributable to earlier months, it must deliver the full value rather than keep those amounts permanently. The Departments explained:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

33. The reasonable-alternative requirement involves more than providing an address for a cessation vendor. In Example 8, the regulation describes a plan that imposes a tobacco surcharge but requires the employee to find a cessation program, pay for it, and supply a completion certificate. That plan fails to make a compliant alternative available. 29 C.F.R. § 2590.702(f)(4)(vi), Example 8. Hard Rock's published Quit For Life program is described as free, but that fact alone does not establish that the Plan makes the same full premium reward available, properly accommodates physicians' recommendations, or gives the mandated disclosures.

34. The statute requires notice of an alternative standard in "all plan materials describing the terms" of the wellness program. 42 U.S.C. § 300gg-4(j)(3)(E); see also 29 C.F.R. § 2590.702(f)(4)(v). The Departments explained that terms affecting premiums, including availability of a reasonable alternative, generally must also be reflected in the summary plan description and applicable governing documents. Final Regulations, 33166 n.24. Plaintiffs have not obtained those governing instruments and do not allege what they say. Their notice claim independently rests on the content of the actual participant-facing Guides that describe the surcharge.

## II. HARD ROCK CANNOT INVOKE ERISA'S WELLNESS PROGRAM EXCEPTION

35. Hard Rock's 2026 Guide expressly states that Team Members covered under a Hard Rock International medical plan who use tobacco products "will have

a surcharge of $15.00 per week." It defines tobacco users as those using cigarettes, cigars, pipes, smokeless products, or inhaled products such as electronic cigarettes. An employee subject to this standard pays a greater contribution for the same medical coverage than a similarly situated employee not classified as a tobacco user.

36. The $15 weekly amount equates to $780 over 52 weeks, if the charge is assessed each week. The exact amounts paid by Plaintiffs during particular calendar or plan years are determinable from Hard Rock's payroll records; Plaintiffs do not assume that the published 2026 weekly rate necessarily applied throughout every earlier year.

37. Immediately after stating the surcharge, the Guide describes "Quit For Life Tobacco Cessation Program." It says that Hard Rock is "proud to offer Quit for Life" and that the program is free to Team Members and adult dependents. It lists an interactive quitting plan, nicotine-replacement therapy when included under the medical plan, savings trackers, texting tools, coaches, and an online community. The Guide places the cessation program in the very discussion that announces the surcharge, making it a description of the relevant wellness program terms, not an unrelated general health advertisement.

38. The Guide identifies two ways to enroll in Quit For Life: calling or visiting a website and entering information. Those are directions for entering the employer-selected cessation service. They do not explain how a participant obtains

the full annual premium reward for satisfying a reasonable alternative or any waiver, where to apply for retrospective repayment, or how a physician-directed alternative will be approved and credited.

39. The published 2026 program describes no steps by which the employee can recover the tobacco surcharges already deducted during the current plan year. It does not state whether merely enrolling in Quit For Life, completing the program, or ceasing to use tobacco ends the charge; much less does it identify any year-to-date refund, lump-sum reimbursement, credit in later pay periods, or other method of delivering the value of the earlier months. The absence is striking because the Guide states the charge in dollars and explains precisely how to enroll in the program.

40. Hard Rock's 2025 and 2023 Guides likewise describe a $15-per-week tobacco surcharge followed by a free Quit For Life program and the same vendor enrollment instructions, without identifying retroactive surcharge reimbursement or a physician-accommodation option. This consistent description in consecutive annual Guides supports Plaintiffs' allegation that the omission is a feature of Hard Rock's program communications.

41. Based on these published descriptions and Plaintiffs' experiences paying the surcharge without any disclosed pathway to a year-to-date refund, Plaintiffs allege that Hard Rock's program does not reimburse or provide equivalent

credits for tobacco surcharges incurred earlier in a plan year when a participant qualifies under a cessation or other reasonable alternative. A prospective reduction or a future-year benefit cannot restore a premium differential already collected for the applicable year. The same, full reward must cover the entire year for which the initial standard would have yielded the lower premium. *See* Final Regulations, 33163.

42. The notice defect is separately apparent on the face of the Benefit Guides. They describe the tobacco standard, the exact surcharge, the company-selected cessation program, its features, and enrollment instructions but contain no statement that a reasonable alternative will be made available to an individual for whom the initial program is medically inappropriate and no assurance that recommendations of the participant's personal physician will be accommodated. These are disclosures required in every plan material that describes the terms of an outcome-based wellness program. 29 C.F.R. § 2590.702(f)(4)(v).

43. In addition, the Guides do not tell tobacco users that satisfying an alternative or obtaining a waiver will earn the same premium reward available to those meeting the initial tobacco-free standard. The toll-free number listed under "TWO EASY WAYS TO ENROLL" connects employees with a Quit Coach; the text does not identify it as the process for requesting a physician-directed alternative, a waiver, or full surcharge reimbursement. The distinction matters to participants

unable to use the company-selected cessation approach and to those whose surcharge has already been deducted.

44. The regulation does not insist on a verbatim quotation from its model notice. *See* 29 C.F.R. § 2590.702(f)(6). But substantially similar language must convey the required substantive rights. Merely advising employees that Quit For Life is free and identifying a Quit Coach does not inform them that an individual physician's recommendations will be accommodated or that the participant may qualify for the same full reward through different means. The Benefit Guides do not convey either essential protection.

45. Each Plaintiff paid a tobacco-related differential for employer medical coverage and does not recall receiving a meaningful explanation of retroactive reimbursement or the ability to obtain a physician-tailored alternative carrying the same reward. Because Plaintiffs were unaware of the availability of a physician-tailored alternative, they had no meaningful opportunity to consider it, consult their physicians about it, or request it. Nor can Plaintiffs reasonably be expected to identify whether they would have pursued an option they did not know existed. Plaintiffs' deductions, eligibility dates, enrollment options, and any correspondence concerning cessation or refunds are reflected in records maintained by Hard Rock and its service providers. Plaintiffs allege, based on their experiences and Hard Rock's own published descriptions, that the same central notice and full reward

failures affected the challenged program while they were participants, depriving them of information necessary to make informed decisions about their coverage and cessation options..

## III. HARD ROCK'S FIDUCIARY ADMINISTRATION AND FINANCIAL BENEFIT FROM THE TOBACCO SURCHARGE

46. ERISA assigns fiduciary status by function. A person is a fiduciary to the extent that person exercises discretionary authority or control respecting Plan management or administration, or any authority or control over management or disposition of Plan assets. 29 U.S.C. § 1002(21)(A). Upon information and belief, Hard Rock exercised or directed functions concerning the application of the tobacco surcharge to employees, payroll implementation, processing of cessation-program information, communications, and any decisions to refund or retain contributions. Plaintiffs seek to establish the actual allocation of those responsibilities from Plan records and discovery.

47. The 2026 Guide and others describe four medical coverage options, but the governing documents are needed to determine whether each option is self-funded, insured, or financed through a combination of arrangements. Regardless of that distinction, Hard Rock collected participant contributions for medical coverage. The relevant question for the fiduciary claim is how the participant-derived surcharges were held, transferred, and applied after collection.

48. Hard Rock expressly identifies the surcharge as an additional $15 weekly charge associated with being covered by an employer medical plan. The surcharge is connected to the cost of coverage and is collected from employees subject to the tobacco classification. The resulting amounts represent participant contributions for group health coverage. Those contributions become Plan assets as of the earliest date they can reasonably be segregated from employer general assets under 29 C.F.R. § 2510.3-102(a)(1).

49. Hard Rock or designated service providers applied the challenged surcharge through employer payroll and benefits-enrollment systems. The employer necessarily maintains or receives information showing who was classified as a tobacco user and which weekly amounts were charged. Plaintiffs further allege that responsible fiduciaries had authority to determine when a participant qualified for a lower charge, what refunds or credits would be paid, and how deducted sums would be transmitted or applied.

50. Once participant deductions become Plan assets, the fiduciary responsible for their management or disposition may not use them for its own account. 29 U.S.C. §§ 1104(a)(1)(A), 1106(b)(1). Plaintiffs allege, upon information and belief, that amounts collected through Hard Rock's noncompliant tobacco program were held in Hard Rock's accounts and used in a manner that benefited Hard Rock, including by reducing amounts it otherwise would have needed to

contribute toward medical coverage or by allowing it to retain the use and time value of participant-derived funds. Whether the charges ultimately financed premiums, paid claims, or were held temporarily in employer-controlled accounts will be established through an accounting.

51. The challenged fiduciary conduct is the actual administration of a participant-funded surcharge and the treatment of contributions collected under it. Hard Rock's decision, acting in a settlor capacity, to offer a plan or establish contribution rates is distinct from fiduciary decisions implementing the surcharge, handling refunds, transmitting Plan assets, and communicating the rights required for participants to avoid the differential. Plaintiffs do not contend that a plan sponsor incurs fiduciary liability merely because it selected a cost-sharing structure.

52. On information and belief, the additional amounts extracted from tobacco users were included among medical-coverage contributions transmitted for the Plan or kept in accounts controlled by Hard Rock or its agents. To the extent Hard Rock applied those sums to expenses that it otherwise would have paid or retained possession of Plan assets for its own financial advantage, it used the Plan's funding machinery to obtain a financial benefit. The precise amounts and whether a portion represented earnings or float will be established through the employer's payroll, remittance, accounting, and bank records.

53. ERISA § 409 makes a breaching fiduciary liable to restore both losses sustained by the Plan and profits made through the use of its assets. 29 U.S.C. § 1109(a). A profit remedy does not always require showing a dollar-for-dollar depletion of the Plan's balance sheet. Plaintiffs seek restoration only of gains traceable to a fiduciary breach or an improper use of Plan assets; ordinary employer savings from a lawful premium schedule, by themselves, do not constitute a prohibited transaction. The accounting will distinguish permissible from impermissible transactions.

54. Hard Rock, the Plan, and their service providers possess the records showing the weekly tobacco deductions, the dates and amounts of any reimbursement or prospective reduction, the accounts to which contributions were sent, the uses of those funds, and the employer's corresponding payments. Those records can show whether Hard Rock received the use or benefit of participant-derived Plan assets and quantify any profits, loss, or other relief. Plaintiffs seek an accounting and the restoration required by ERISA, without duplicative recovery between the Plan and individual participants.

## CLASS ACTION ALLEGATIONS

55. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(a) and (b)(1), (b)(2), and, as appropriate, (b)(3), including a representative claim for Plan-wide relief under ERISA § 502(a)(2). The "Class Period" runs from six years

before the filing of this Complaint through entry of final judgment, subject to applicable limitations periods, the identification of the governing Plan or Plans, and appropriate refinement after discovery.

56. Plaintiffs seek to represent the following Class, subject to modification after production of the governing benefit instruments and enrollment data:

> **Tobacco Surcharge Class**
> All individuals who, during the Class Period, paid an additional premium or contribution because of tobacco-use status in connection with the Plan.

57. Excluded from the Class are Defendant's officers and directors, persons responsible for the challenged fiduciary conduct, the judges assigned to this action, and their immediate family members. If discovery establishes more than one legally distinct ERISA plan, Plaintiffs will seek an appropriately narrowed Class or plan-specific subclasses as required by Rule 23(c)(5).

58. Plaintiffs reserve the right to refine the Class definition, Class Period, and representative structure after Defendant identifies the governing Plan or Plans, the participating employers, and the records necessary to identify those subjected to the surcharge.

59. **Numerosity.** Hard Rock's published Guides apply the $15-per-week tobacco surcharge to Team Members covered under a Hard Rock International medical plan, rather than to one identified employee. The Guides describe a company benefits program with multiple medical options and the surcharge affected

enough employees nationwide that joinder is impracticable. Defendant's eligibility, payroll, and enrollment records will establish the number, locations, coverage periods, and amounts paid by Class Members.

60. **Commonality.** Questions capable of common proof and resolution include:

a. whether Hard Rock imposed a differential in medical premiums or contributions based on tobacco-use status;

b. whether its Quit For Life program and any other reasonable alternative provided the same, full reward for the applicable plan year;

c. whether Hard Rock withheld earlier-year or earlier-month surcharge amounts without full retrospective reimbursement or an economically equivalent credit after participants satisfied a reasonable alternative;

d. whether its 2023, 2025, and 2026 Guides and other materials describing the surcharge disclosed the availability of an alternative or waiver and the accommodation of personal-physician recommendations;

e. which entity or individuals exercised fiduciary authority over the surcharge, participants' contributions, communications, reimbursements, and Plan assets, and whether those functions were performed loyally and prudently;

f. whether any fiduciary used Plan assets for its own benefit or failed to prudently monitor persons exercising delegated authority over the surcharge; and

g. the amount and appropriate form of declaratory, injunctive, accounting, equitable-restitution, surcharge, profit-restoration, and other nonduplicative relief.

61. **Typicality.** Each Plaintiff participated in Hard Rock-associated medical coverage, was assessed additional contributions because of a tobacco classification, and lacked a disclosed way to receive the full annual reward or invoke a physician-accommodating alternative. Their statutory claims turn on the same

participant materials and asserted administration as the claims of the Class. Differences in employment dates or dollar amounts affect calculations but do not change the principal common questions.

62. **Adequacy of Representation.** Plaintiffs Taylor, Parker, and Bermudes have sustained the same general premium injury challenged on behalf of the Class. They have retained counsel experienced in ERISA class-action litigation and have no known interests adverse to the proposed Class. Parker's employment status does not diminish her interest in recovering charges paid during her participation. Each is prepared to represent similarly situated members subject to confirmation of the correct Plan and any required subclass structure.

63. Classwide relief is appropriate because Hard Rock adopted and applied common written descriptions of its surcharge and cessation program. Separate actions seeking changes to Plan fiduciary practices, accounting for Plan assets, or Plan-level recovery risk inconsistent standards or impair other participants' interests, supporting Rule 23(b)(1).

## CAUSES OF ACTION

## COUNT I

## UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE A COMPLIANT REASONABLE ALTERNATIVE STANDARD AND THE FULL REWARD

(Violation of ERISA § 702, 29 U.S.C. § 1182(b), and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(C)–(D); 29 C.F.R. § 2590.702(f)(4)(iii)–(iv))

64. Plaintiffs reallege and incorporate paragraphs 1–63 of this Complaint, excluding the allegations of the other Counts.

65. ERISA prohibits a group health plan from charging greater premiums or contributions to individuals because of tobacco use unless the plan complies with the statutory exception permitting lawful health-contingent wellness programs. 29 U.S.C. § 1182(b)(1)–(2); 42 U.S.C. § 300gg-4(b), (j). Hard Rock's published $15-per-week charge is a premium differential based on a health-status-related factor.

66. A compliant outcome-based wellness program must be reasonably designed and must make the full reward available to all similarly situated participants who satisfy a reasonable alternative or receive a waiver. 42 U.S.C. § 300gg-4(j)(3)(C)–(D); 29 C.F.R. § 2590.702(f)(4)(iii)–(iv). The Departments explained that a participant satisfying an alternative partway through a year must receive the full value of the annual premium discount, including the months before qualification. Final Regulations, 33163.

67. The 2026 Guide connects a tobacco-user surcharge with the free Quit For Life cessation program, yet says nothing about refunds or credits for amounts previously collected. It contains no instruction for proving completion to Hard Rock, requesting a year-to-date rebate, or obtaining the earlier months' reward. The 2023 and 2025 Guides have the same material omission. Plaintiffs allege, based on those published program descriptions and their own experiences, that Hard Rock's administration does not give persons satisfying a reasonable alternative reimbursement or an equivalent credit for amounts charged earlier in the year.

68. A participant who meets the initial tobacco-free standard avoids the applicable surcharge over the entire plan year. A participant who satisfies a qualifying alternative but receives only an end to future deductions, or no disclosed premium benefit at all, does not obtain that same reward if previously collected amounts are permanently retained. A difference in how the full amount is paid would be permissible; a permanent difference in the amount is not. The Guides identify no means to eliminate that shortfall.

69. A cessation program that provides valuable coaching or nicotine-replacement products nevertheless fails the full reward requirement if it does not deliver the same premium relief. Nor may Hard Rock defend the differential by pointing to a theoretical refund practice that participants were not told how to invoke and that, Plaintiffs allege, was not furnished to persons qualifying during the plan

year. The deficiency goes to the amount of the required reward, not to a preference for one administrative payment method over another.

70. Because Hard Rock imposed the differential without making the full current-year reward available under its reasonable-alternative process, Plaintiffs allege that the program fails the conditions of the statutory wellness-program exception. Plaintiffs challenge the differential itself and seek redress under ERISA § 502(a)(3), rather than asserting claims for individual medical services under the terms of the Plan.

71. The unauthorized differential caused Plaintiffs and Class Members to pay additional amounts for medical coverage based on their tobacco classification and lose the possession and use of those amounts. The amounts charged, times paid, and any credits or reimbursements are ascertainable from common payroll and Plan records.

72. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes appropriate equitable relief to enjoin conduct violating ERISA and redress those violations. Plaintiffs seek declaratory and injunctive relief, an accounting, equitable restitution of identifiable amounts, surcharge against any breaching fiduciary, and other relief appropriate to the proven facts, without duplicate recovery.

## COUNT II

## UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE REQUIRED NOTICE

## (Violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v))

73. Plaintiffs reallege and incorporate paragraphs 1–63 of this Complaint, excluding the allegations of the other Counts.

74. Hard Rock's $15-per-week surcharge subjects medical-plan participants classified as tobacco users to greater contributions for the same coverage. Under 29 U.S.C. § 1182(b)(1)–(2) and 42 U.S.C. § 300gg-4(b), (j), that differential is permissible only if the employer or Plan satisfies every applicable condition governing outcome-based wellness programs, including the notice requirement.

75. ERISA requires disclosure of the availability of a reasonable alternative standard, or waiver where applicable, in ***all plan materials describing the terms*** of an outcome-based wellness program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). The statute's "all" requirement makes each material that explains how the surcharge works independently important.

76. A compliant description must communicate the availability of a reasonable alternative or waiver, contact information for obtaining it, and an assurance that the recommendations of the participant's personal physician will be accommodated. 29 C.F.R. § 2590.702(f)(4)(v). The regulation permits substantially

similar language to the model notice, but the substance of these protections must still be conveyed. *Id*. § 2590.702(f)(6).

77. The 2026 Guide identifies the initial tobacco-use standard, the $15-per-week charge, the free Quit For Life program, its activities, its vendor, and instructions for enrolling. The Guide therefore does more than mention that a wellness program exists; it describes the particular health-status classification that increases premiums and presents the cessation program in direct connection with the charge. The same structure appears in the 2023 and 2025 Guides.

78. Despite that description, the Guides do not state that a participant's personal physician's recommendations will be accommodated in selecting a reasonable alternative. It does not inform participants who cannot meet the initial standard that they may qualify for a waiver or an individualized alternative carrying the same reward. The absence of those disclosures is clear from the face of the Guide. Naming a Quit Coach and listing the features of a company-selected program do not supply the physician-accommodation statement.

79. The Guides' deficiency cannot be resolved by assuming favorable terms in a summary plan description that Plaintiffs have not obtained. If the governing Plan terms provide a more generous reasonable alternative or reimbursement mechanism, that still would not discharge the obligation to

communicate the required rights in every material describing the program's terms. The Guides do not furnish the mandated physician-accommodation statement.

80. The Departments explained that wellness terms affecting premiums, including a reasonable alternative, generally must be disclosed in summary plan descriptions and governing documents. Final Regulations, 33166 n.24. ERISA also requires summary plan descriptions to apprise participants of their rights and obligations. 29 U.S.C. § 1022(a)–(b). Plaintiffs do not assert a separate § 1022 violation based on an unreviewed summary plan description. Rather, these provisions reinforce why Hard Rock's published description of a recurring $15 charge must accurately disclose the protections relevant to avoiding it.

81. The 2026 Guide provides a Benefits Service Center telephone number elsewhere and a link or code for separate legal notices. A generally available service number or a cross-reference to another document does not put the physician-accommodation and same-reward disclosures into the detailed program description. Even if another document states those rights, compliance with a disclosure duty that expressly applies to *all* program materials is not established by disclosure in only one location.

82. None of the Benefit Guides contained the required physician-accommodation assurance. Plaintiffs do not recall receiving communications that explained those protections or told them that completing an individualized

alternative entitled them to a full premium reward. These omissions made it materially more difficult to understand and invoke the protections needed to avoid the additional charges.

83. By requiring higher contributions based on tobacco use while failing to give the notices required to qualify for the wellness exception, Hard Rock violated 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(j)(3)(E). Plaintiffs and Class Members suffered concrete financial injury through collection of the differential and loss of the use of their money.

84. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs and the Class seek appropriate declaratory and injunctive relief, an accounting, restitution of traceable sums, surcharge against responsible fiduciaries, and other equitable relief necessary to redress the unlawful surcharge and disclosure practices, without double recovery.

## COUNT III
## BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)
### (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109; Brought Under 29 U.S.C. § 1132(a)(2))

85. Plaintiffs reallege and incorporate paragraphs 1–63 of this Complaint, including the allegations concerning functional fiduciary authority, surcharge administration, participant contributions, and the financial benefit of their handling, but excluding the allegations of the other Counts.

86. A fiduciary is any person, to the extent that person exercises discretionary authority or control respecting Plan management or administration or authority or control respecting the management or disposition of Plan assets. 29 U.S.C. § 1002(21)(A). The governing Plan document identifying its administrator and named fiduciaries has not been obtained. Plaintiffs allege Hard Rock's fiduciary status based on the administrative and asset-management functions it performed, the scope of which will be established through discovery.

87. Upon information and belief, Hard Rock controlled or exercised discretionary authority over aspects of the challenged program, including the tobacco-status classification used for payroll deductions, program implementation, communications, eligibility for premium relief, and the making or refusal of reimbursements. Its corporate benefits program and service providers maintained the data necessary to impose and adjust the surcharge. Defendant acted in a fiduciary capacity to the extent its authority reached discretionary Plan administration rather than ordinary employer payroll processing alone.

88. Hard Rock further acted as a fiduciary to the extent it exercised authority or control over management or disposition of participant contributions after those contributions became Plan assets. The weekly charge described in the 2026 Guide was imposed for medical coverage. Once deducted sums were

reasonably segregable from general assets, their handling was subject to the fiduciary rules applicable to Plan assets. 29 C.F.R. § 2510.3-102(a)(1).

89. To the extent Defendant delegated administrative or asset-management functions to benefit vendors, claims administrators, or other persons, it had a fiduciary duty, within the scope of its own authority, to select and monitor those exercising fiduciary responsibilities prudently.

90. In each fiduciary capacity established by the evidence, Hard Rock was required to discharge its duties solely in the interests of Plan participants and beneficiaries, with the care, skill, prudence, and diligence of a prudent fiduciary, and in accordance with governing Plan documents only insofar as consistent with ERISA. 29 U.S.C. § 1104(a)(1)(A), (B), (D). ERISA separately prohibits fiduciaries from dealing with Plan assets in their own interest or for their own account. 29 U.S.C. § 1106(b)(1).

91. The challenged functions concern the administration and disposition of actual deductions and the communication of rights governing those deductions. Plaintiffs distinguish those fiduciary functions from Hard Rock's business choice to offer medical coverage or to set contribution rates in a settlor capacity. The allegation is that those responsible for administering the surcharge and controlling collected Plan assets failed to comply with duties imposed independently by ERISA.

92. Hard Rock's Guide identifies a weekly premium surcharge rather than an unrelated employment fine. Participant contributions withheld from wages for ERISA coverage become Plan assets as soon as they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1), (c). The Plan's accounts, remittance schedules, payroll data, and governing instruments will show when these sums became Plan assets and who exercised control over them thereafter.

93. The precise medical-plan financing structure remains to be established. Plaintiffs do not allege a specific self-insured funding arrangement or quote a provision requiring payment from employer general assets. Instead, they allege on information and belief that Hard Rock or those acting for it collected or controlled the extra $15 weekly contributions and that, to the extent such amounts became Plan assets, the persons controlling them had to use them for proper Plan purposes rather than Hard Rock's own account.

94. Upon information and belief, Hard Rock obtained financial advantages from the surcharge revenue by applying participant contributions toward costs otherwise funded by employer money or retaining possession and use of participant-derived Plan assets. The surcharge increased the amount financed from wages for the same coverage. Plaintiffs seek to determine, through accounting, whether and in what amount the resulting employer gain derived from fiduciary use of Plan assets rather than permissible plan-design decisions.

95. To the extent participant funds remained in employer-controlled accounts after becoming Plan assets, Hard Rock also obtained their time value, interest, investment return, or float. The amount and duration of such gain can be measured from bank balances, transfer dates, and the timing of actual Plan payments. Plaintiffs do not assume a particular return, account, or amount without those records.

96. Hard Rock's 2026 Guide clearly announces the $15 weekly surcharge but nowhere explains how tobacco users who pursue Quit For Life may obtain retroactive reimbursement or the same annual premium reward. Nor does the Guide contain the statement that personal-physician recommendations will be accommodated. Fiduciaries responsible for program administration and communications failed to correct these material omissions while continuing to impose the charge.

97. If Hard Rock asserts that qualifying employees could receive full current-year credits, physician-directed alternatives, or waivers under undisclosed procedures, the fiduciaries administering the program were obligated to communicate material information accurately and prudently within the scope of their responsibilities. Plaintiffs' complaint includes the independent injury of paying additional contributions while the operative means of avoiding or recouping those contributions were inadequately disclosed.

98. Upon information and belief, the fiduciaries responsible for the program failed to conduct an adequate review of its written disclosures, administration of cessation alternatives, payroll deductions, reimbursement process, and handling of contributions. The same material omissions appear in consecutive annual Guides, while the employer continues to collect a stated weekly premium surcharge. That continuity supports an inference of inadequate correction and monitoring, subject to discovery of the relevant review practices.

99. To the extent fiduciary functions were delegated, the responsible appointing fiduciaries failed to monitor whether delegates administered the surcharge and communications lawfully, transmitted participant Plan assets properly, and made the full reward available. This allegation concerns actual delegated fiduciary functions and not a claim that every service-provider error automatically makes Hard Rock liable.

100. The need for prudent oversight was particularly important where Hard Rock stood to gain financially from additional participant contributions. Upon information and belief, it had an incentive to maintain higher payroll collections and retain funds that otherwise would have been repaid or credited. Plaintiffs seek to determine whether its fiduciaries addressed this conflict or instead permitted improper employer benefit from controlled Plan assets.

101. By administering and communicating the surcharge without the required protections, and by using or permitting the use of Plan assets for impermissible employer benefit to the extent shown, the responsible fiduciaries breached ERISA's duties of prudence and loyalty. 29 U.S.C. § 1104(a)(1). Plaintiffs do not premise fiduciary liability solely on the adoption of a premium differential; the claim rests on fiduciary implementation, monitoring, and disposition of participant-derived funds.

102. To the extent Hard Rock was a fiduciary controlling Plan assets and caused those assets to be used for its own benefit, its conduct also constituted a prohibited transaction under 29 U.S.C. § 1106(b)(1). To the extent it caused a transfer to, or use by or for the benefit of, a party in interest, the conduct implicated 29 U.S.C. § 1106(a)(1)(D). Plaintiffs seek an accounting to establish those transactions and recognize that the statutory exemptions, if any, must be evaluated on the actual facts. *See Cunningham*, 604 U.S. at 702–04.

103. ERISA § 409 requires a breaching fiduciary to restore losses to the Plan and profits made through the use of its assets. 29 U.S.C. § 1109(a). The Plan's ability to pay claims would not, by itself, eliminate liability to restore improper fiduciary profits. Plaintiffs seek both measures to the extent actually established, without presuming that every dollar collected as a medical contribution constitutes a fiduciary profit.

104. As a result of the alleged breaches, Plan assets may have been used or retained for Hard Rock's benefit, including through avoided expenditures, use of cash, float, or other gains. On information and belief, those gains arose from amounts deducted under the challenged surcharge and from decisions about their disposition after they became Plan assets. The amount of any actual loss or gain requires discovery and an accounting.

105. Hard Rock and the Plan's administrators maintain the information necessary to evaluate these claims: employment classifications, tobacco-status elections, medical-contribution schedules, payroll deduction records, remittance and trust-account statements, carrier or administrator payments, refund records, and the allocation of employer contributions. Those records will show whether any Plan assets were misused and what restoration is appropriate.

106. Plaintiffs bring this Count in a representative capacity under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief to the Plan under § 409, 29 U.S.C. § 1109(a). They have a personal stake because they themselves paid the challenged contributions. They seek an accounting and restoration of actual Plan losses and fiduciary profits, and any other remedy appropriate for the Plan, including changes to fiduciary administration if warranted. The Plan-level recovery shall be coordinated with individual equitable relief to prevent double recovery.

**COUNT IV**

**BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)**

**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106; Brought Under 29 U.S.C. § 1132(a)(3))**

107. Plaintiffs reallege and incorporate paragraphs 1–63 of this Complaint, including the facts concerning fiduciary administration, participant deductions, failures to communicate material rights, and alleged improper financial benefits, excluding allegations of other Counts.

108. Hard Rock is an ERISA fiduciary to the extent it exercised discretionary authority over surcharge and wellness-program administration, including participant notices and refund decisions, or authority or control over the disposition of participant-derived Plan assets. 29 U.S.C. § 1002(21)(A). The current record does not identify a named plan fiduciary from a summary plan description. Plaintiffs plead functional fiduciary status based on the challenged conduct and seek the actual governing documents through discovery.

109. Hard Rock's 2023, 2025, and 2026 Guides disclose a weekly tobacco surcharge and free cessation services but omit the personal-physician accommodation statement, a clear route to the full premium reward, and any procedure for retroactive reimbursement. On information and belief, fiduciaries responsible for administering and communicating the program allowed those deficiencies to continue while tobacco users continued to pay the additional

contribution. That conduct failed to give participants material information required to understand and exercise their Plan-related rights.

110. If a qualifying employee could in fact secure a refund, waiver, or physician-directed reasonable alternative through an internal process, Plaintiffs allege the responsible fiduciaries failed to communicate the process accurately and adequately. Taylor, Parker, and Bermudes do not recall receiving notice of any such route to reimbursement or individual accommodation. What participants were told matters because the surcharge was actually collected from their compensation.

111. Upon information and belief, the fiduciaries also failed to prudently review and monitor the operation of the deduction and refund processes and the service providers responsible for communicating and administering them. The continued use of program descriptions with the same substantial omissions across successive benefit years supports the alleged monitoring failure.

112. These deficiencies caused concrete injury. Each Plaintiff paid additional medical-coverage contributions because of a tobacco classification, lost possession and use of the amounts deducted, and was not told of an effective route to recoup earlier surcharges through the same full reward. Their claims do not rest on a bare entitlement to receive information; the deficient administration and notices were connected to money taken from their pay for the same coverage.

113. Upon information and belief, Hard Rock or related fiduciaries obtained a corresponding financial advantage to the extent the additional employee contributions displaced employer funding or Plan assets were used or held for its account. The financial record will determine whether the corresponding sums represent identifiable property, improperly earned profits, or loss appropriately redressable through equitable surcharge.

114. ERISA § 502(a)(3) authorizes appropriate equitable relief for fiduciary breaches. Plaintiffs seek, as supported by tracing and proof, equitable restitution of identifiable funds or proceeds, a constructive trust or equitable lien, an accounting and disgorgement of fiduciary profits, and equitable surcharge against a fiduciary for losses caused by the breach. No monetary relief is sought on the theory that every employer saving automatically constitutes a prohibited gain.

115. The challenged conduct arises from administering the surcharge, failing to furnish required and accurate participant communications, and controlling contributions after they became Plan assets, each to the extent performed by a fiduciary. Plaintiffs seek to redress those distinct functions, not to relabel ordinary employer decisions about plan design as fiduciary breaches.

116. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs and the Class request appropriate equitable restitution, surcharge, disgorgement, accounting, constructive trust or equitable lien over traceable funds, and declaratory and

injunctive relief. The remedies are pleaded in the alternative or cumulatively where legally permissible, and Plaintiffs seek no duplicate recovery and no payment of medical-expense benefits under § 502(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Hard Rock and an award of the following relief:

A. An Order certifying a Class under Rule 23 of the Federal Rules of Civil Procedure, appointing Taylor, Parker, and Bermudes or appropriate representatives for any subclasses, and appointing undersigned counsel as Class Counsel;

B. A declaration that the challenged tobacco-based premium differential violates ERISA § 702, 29 U.S.C. § 1182, and the applicable wellness-program requirements;

C. Appropriate equitable relief requiring Hard Rock to reimburse or credit Plaintiffs and Class Members for tobacco-related contributions unlawfully collected under the noncompliant premium differential;

D. A declaration that any fiduciary administration, monitoring, or use of participant-derived Plan assets established at trial violated 29 U.S.C. §§ 1104 or 1106;

E. An accounting of tobacco-related contributions and surcharges, eligibility for alternatives, refunds and credits provided or withheld, transfers and disposition of Plan assets, and any resulting Plan losses or fiduciary profits;

F. Injunctive relief requiring compliant surcharge and alternative-standard disclosures, a lawful process providing the same full premium reward, and proper fiduciary handling of participant contributions;

G. Disgorgement and restoration of profits, float, or other financial benefits shown to have been obtained through fiduciary breaches or prohibited use of Plan assets;

H. Equitable restitution of identifiable funds and proceeds, including an equitable lien or constructive trust wherever the legal requirements for such relief are met;

I. Equitable surcharge against any responsible fiduciary for losses caused by the established breaches;

J. Relief to the Plan under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), including restoration of actual losses and fiduciary profits, an accounting, and corrective administration where appropriate;

K. An award of prejudgment interest on amounts awarded, as permitted by law;

L. An award of reasonable attorneys' fees, expenses, and taxable costs under ERISA § 502(g), 29 U.S.C. § 1132(g), or other applicable authority; and

M. Any other relief the Court determines just and proper, without duplicate recovery.

Dated: October 23, 2026

Respectfully submitted,

/s/ *Alycia Araj Perkins*

Alycia Araj Perkins (Bar # 1049328)
**SIRI & GLIMSTAD LLP**
Oren Faircloth (*pro hac vice* forthcoming)
William H. Payne (*pro hac vice* forthcoming)
20200 West Dixie Highway, Suite 902
Aventura, FL 33180
Tel.: (240) 732-6737
E: aperkins@sirillp.com
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*